IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHARP MEXICAN PARTNERS, LP,           §
d/b/a MANNY'S UPTOWN and SHARP        §
MEXICAN #8, LLC d/b/a MANNY'S         §
LAKEWOOD,                             §
                                      §
          Plaintiffs,                 §
                                      §
V.                                    §          No. 3:17-cv-1605-S-BN
                                      §
REPUBLIC WASTE SERVICES OF            §
TEXAS, LTD. d/b/a REPUBLIC            §
SERVICES OF DALLAS & d/b/a            §
ALLIED WASTE SERVICES OF              §
DALLAS,                               §
                                      §
          Defendant.                  §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge

for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference

from United States District Judge Karen Gren Scholer. *See* Dkt. No. 108.

Four motions are pending before the Court:

· Plaintiffs' Motion for Class Certification [Dkt. No. 90];

· Plaintiffs' Motion for Leave to Amend to Add Plaintiffs [Dkt. No. 99];

· Defendant's Amended Motion for Summary Judgment [Dkt. No. 101]; and

· Plaintiffs' Amended Motion for Continuance of Defendant's Motion for Summary
  Judgment/Motion for Protection [Dkt. No. 109].

The parties disagree as to the order in which the Court should decide these

-1-

motions. Because the amended motion for summary judgment may be dispositive of the case, the undersigned will first address the two motions concerning summary judgment.

## Background

This is a breach-of-contract case in which the Court must determine whether the contracts are ambiguous or unambiguous and, if they are unambiguous, to interpret them as a matter of law. The contract terms at issue concern a "container refresh" charge.

Plaintiffs Sharp Mexican Partners, LP d/b/a Manny's Uptown ("Manny's Uptown") and Sharp Mexican #8, LLC d/b/a Manny's Lakewood ("Manny's Lakewood"), two restaurant entities, contracted with Defendant Republic Waste Services of Texas Ltd. d/b/a Republic Services of Dallas and d/b/a Allied Waste Services of Dallas, a waste collection service provider, for the collection, transportation, and disposal of all of Plaintiffs' non-hazardous waste materials. To be eligible for waste-collection services from Republic, Plaintiffs were required to sign Customer Service Agreements (the "Agreements"). *See* Dkt. No. 18.

Manny's Uptown contracted with Republic for waste removal services in a July 2014 contract (the "2014 CSA"). The 2014 CSA's first page listed costs under headings, including headings for "monthly" costs and "additional charges." Dkt. No. 18; Dkt. No. 103 at 4. The second page included a provision that allowed for the modification of the contract rates:

> RATE ADJUSTMENTS - [Republic] may, from time to time by notice to Customer, increase the rates provided in this Agreement to adjust for any increase in: (a) disposal costs; (b) transportation costs due to a change in

location of Customer or the disposal facility used by [Republic]; (c) the Consumer Price Index for all Urban Customers; (d) the average weight per cubic yard of Customer's Waste Materials above the number of pounds per cubic yard upon which the rates provided in this Agreement are based as indicated on the cover page of this Agreement; or (e) [Republic's] costs due to changes in Applicable Laws. [Republic] may increase rates for reasons other than those set forth above with Customer's consent, which may be evidenced verbally, in writing or by the parties' actions and practices.

Dkt. No. 103 at 5.

In January 2016, Republic provided Manny's Uptown with written notice regarding the addition of the Container Refresh service. *See id.* at 10. In the "Important Information" section of the January invoice sent to Manny's Uptown, Republic explained that future invoices would include a $9 monthly rate for the service:

Your future invoices will include a charge for Container Refresh. This lets you swap your container once a year for a low $9 monthly rate. Plan and opt-out details enclosed, or by email if you are paperless.

*Id.* Republic asserts that it also provided a separate Notice of Service Change, Rate Adjustment & Contract Modification (the "Insert Notice") with additional details:

Service Change, Rate Adjustment & Contract Modification details and opt-out information:

- Customer is automatically enrolled in Container Refresh and enrollment will be automatically renewed each month until customer cancels participation.
- Customer is required to call Republic Services at the customer service number noted on customer's invoice to opt out of Container Refresh or to cancel participation in the program. The decision to opt out will not affect any other terms of customer's existing contract/service agreement.
- Customer is required to call and request the container exchange and is eligible for one container exchange for every 12 months of enrollment.
- Payment of the $9 monthly participation rate is required for 12 consecutive months from date of enrollment if customer requests

-3-

    and receives a container exchange.

- Republic Services reserves the right to cancel Container Refresh at its discretion, in which case a customer who has not received a container exchange may request a credit.

- Customer's contract/service agreement may require that customers consent to the charge for this service. Under such contracts/agreements, customer's payment of the monthly charge for Container Refresh provides such consent.

You will receive this notice twice. The first notice will be sent 30 days before the first charge will appear on your invoice to allow you time to opt out of the program. The second notice will accompany an invoice that will include the first monthly charge for participation in the program unless you previously opted out. Because of the processing time involved, a charge may appear on your bill after you have decided to opt out of this program. If that occurs, please contact customer service to confirm your opt-out was received and the charge was removed from your account.

*Id.* at 12; *see also id.* at 2 ¶¶ 6, 10-12; 215-226; 227-230.

The February 2016 invoice included a notice of the rate change and additional service in the "Important Information" section:

The invoice includes a charge for Container Refresh in which you are automatically enrolled. Plan and opt-out details are enclosed or in a separate email if you are paperless.

*Id.* at 13. Republic asserts that the Insert Notice was provided to Manny's Uptown a second time with the February 2016 invoice. *See id.* at 2 ¶¶ 6, 10-12; 215-226; 227-230.

The February 2016 invoice charged Manny's Uptown for the $9 Container Refresh Fee as a separate line item and designated the $9 as a charge for the upcoming month of March: "Container Refresh (03/01/16 - 03/31/16)." *Id.* at 13. Each invoice subsequently submitted to Manny's Uptown included a similar line item for the Container Refresh charge. *See id.* at 15-46. Manny's Uptown paid Republic the $9 Container Refresh charge for March 2016 and the remaining eight months under the

2014 CSA.

On October 21, 2106, Republic entered into a new Customer Service Agreement with Manny's Uptown (the "2016 Uptown CSA") and Manny's Lakewood (the "2016 Lakewood CSA"; together with the 2016 Uptown CSA, "the 2016 CSAs"). *See id.* at 6-7, 8-9. The first page of both the 2016 Uptown CSA and the 2016 Lakewood CSA listed costs under headings, including headings for "monthly service," "additional charges," and "one time charges." *Id.* at 6, 8. It listed "Container Refresh" as an "additional charge" of $9. *Id.* On the second page of each of the 2016 CSA's, the Container Refresh charge is explained:

> If service to Customer includes Container Refresh, Customer is limited to requesting one exchange of each participating container every twelve months of paid enrollment; any additional exchange is subject to Company's standard container exchange fee. Customer agrees that during any enrollment year in which Customer receives an exchange under the program, any service change request by Customer to Cancel Container Refresh will not be effective until Customer completes payment for twelve (12) consecutive months of enrollment in the program. Company reserves the right, in its sole discretion, to suspend or cancel the Container Refresh program.

*Id.* at 7, 9.

As a new customer, Manny's Lakewood obtained six months' free enrollment in the Container Refresh program. The Comments section of the first page of the 2016 Lakewood CSA provides: "Container Refresh Promotional Period: 6 months free." *Id.* at 8.

Republic invoiced both Plaintiffs $9 each month for Container Refresh. *See id.* at 13-14, 15046, 47-62. The invoices listed the Container Refresh charge on each invoice

and specifically designated the month to which the fee applied. *See id*. The Lakewood
CSA invoices also reflected a $9 credit each month for Container Refresh for the first
six months of the CSA in compliance with the promotional period. *See id*. at 8-9, 47-58.

Plaintiffs sued Republic over the Container Refresh charges. In their Second
Amended Complaint and Class Action, filed after Republic removed the case based on
diversity jurisdiction, *see* Dkt. No. 1, Plaintiffs assert claims for breach of contract,
fraud by nondisclosure, and fraudulent inducement. *See* Dkt. No. 18 at 4-9. The Court
dismissed Plaintiffs' fraud by nondisclosure and fraudulent inducement claims. *See* Dkt.
No. 57. Only the breach-of-contract claim remains.

Plaintiffs allege that Republic unilaterally added a Container Refresh fee onto
Manny's Uptown's monthly invoice in 2014 and that, after paying the Container Refresh
charge for nine months without a contractual agreement, they were fraudulently
induced into signing new contracts with Republic that contained ambiguous language
regarding the Container Refresh program and that Republic failed to disclose that the
Container Refresh fee was a monthly charge. They allege that they never requested
enrollment in the Container Refresh program and never requested a container
exchange. Nevertheless, they have paid and continue to pay the Container Refresh fee
to Republic. *See id*. at 4.

Republic deposed Plaintiffs' designated corporate representative, Maria Ann
Espinoza. *See* Dkt. No. 103 at 66. Ms. Espinoza testified that the Insert Notice and the
Important Information sections of the January and February 2016 invoices are not

ambiguous. *See id.* at 100-03, 109-11, 114-18. She also testified that the Insert Notice and all of the invoices from January 2016 through June 2017 unambiguously show that the $9 Container Refresh charge is a monthly charge. *See id.* at 100-03, 109-11, 114-24, 131-32.

Republic filed a motion for summary judgment, *see* Dkt. No. 60, which the Court denied without prejudice without opinion, *see* Dkt. No. 84. Republic states that the Court told the parties that Republic could refile the motion for summary judgment if mediation between the parties was unsuccessful – which it was. *See* Dkt. No. 97.

Plaintiffs filed a motion for class certification before mediation, *see* Dkt. No. 90, and, after mediation, filed a motion to amend their complaint to add two additional parties, *see* Dkt. No. 99.

Republic filed an amended motion for summary judgment based on the argument that the contracts between the parties are unambiguous and may be construed by the Court as a matter of law. *See* Dkt. No. 101. Plaintiffs filed a response, *see* Dkt. No. 110, and Republic did not file a reply.

Plaintiffs then filed a motion to continue the amended motion for summary judgment, *see* Dkt. No. 104, which they amended, *see* Dkt. No. 109. Plaintiffs ask the Court to decide their motion for class certification before it decides Republic's amended motion for summary judgment. Plaintiffs also assert that they need additional discovery to provide a full and complete response to the amended motion for summary judgment. Republic filed a response to Plaintiffs' Amended Motion for Continuance of Defendant's

Motion for Summary Judgment/Motion for Protection, *see* Dkt. Nos. 105 & 113, and Plaintiffs did not file a reply.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported

speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little,* 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56

-10-

does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

Federal Rule of Civil Procedure 56(d) provides that the Court may defer a motion for summary judgment or allow time for a nonmovant to obtain affidavits or declarations or to take discovery if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."

FED. R. CIV. P. 56(d). This rule is "designed to safeguard against a premature or improvident grant of summary judgment." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

To justify a continuance, the Rule 56(d) motion must demonstrate (1) why the movant needs additional discovery and (2) how the additional discovery will likely create a genuine issue of material fact. *See Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534–35 (5th Cir. 1999) (construing former FED. R. CIV. P. 56(f)); *accord Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999) ("To obtain a continuance of a motion for summary judgment, a party must specifically explain both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence." (internal quotation marks omitted)).

In response to a proper motion for a continuance to obtain further discovery, the Court may "(1) defer considering the [summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).

"Rule 56(d) discovery motions are broadly favored and should be liberally granted." *Integracolor, Ltd. v. McClure*, No. 3:13-cv-4357-B, 2014 WL 4209577, at *3 (N.D. Tex. Aug. 26, 2014) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010); internal quotation marks omitted). The Court generally should grant "a continuance for additional discovery if [the nonmovant]: (i) requested extended discovery prior to [the

Court's] ruling on summary judgment; (ii) placed [the Court] on notice that further discovery pertaining to the summary judgment motion was being sought; and (iii) demonstrated to [the Court] with reasonable specificity how the requested discovery pertained to the pending motion." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) (citations omitted) (construing former FED. R. CIV. P. 56(f)).

But a Rule 56(d) "motion to re-open discovery [is] procedurally defective" – and therefore must be denied – if "a party requesting additional discovery as to facts essential to its opposition of a motion for summary judgment [fails] to present an affidavit or declaration." *Leza v. City of Laredo*, 496 F. App'x 375, 377-78 (5th Cir. 2012) (per curiam). "To succeed on a Rule 56(d) motion, ... the party requesting discovery must provide an affidavit or declaration in support of the request that 'state[s] with some precision the materials he hope[s] to obtain with further discovery, and exactly how he expect[s] those materials w[ill] assist him in opposing summary judgment.'" *Whitener v. Pliva, Inc.*, 606 F. App'x 762, 765 (5th Cir. 2015) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1443 (5th Cir. 1993)).

And the nonmovant must "present specific facts explaining his inability to make a substantive response ... and specifically demonstrating how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact" and defeat summary judgment. *Washington*, 901 F.2d at 1285 (internal quotations and citations omitted) (construing former FED. R. CIV. P. 56(f)). The nonmovant "may not simply rely on vague assertions

that additional discovery will produce needed, but unspecified, facts." *Raby*, 600 F.3d at 561 (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980)). "Rather, a request to stay summary judgment under [Rule 56(d)] must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Id.* (quoting *C.B. Trucking, Inc. v. Waste Management Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)).

The party requesting the additional discovery or extension also must show that relevant discovery has been diligently pursued. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992). The Court may properly deny a Rule 56(d) motion where the movant has "not pursued discovery diligently enough to warrant relief under Rule 56(d)." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014) (internal quotation marks omitted).

"'If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment.'" *Raby*, 600 F.3d at 561 (quoting *Access Telecom*, 197 F.3d at 720). And a Rule 56(d) motion may properly be denied where "the party filing the Rule 56(d) motion has failed to identify sufficiently specific or material evidence to affect a summary judgment ruling." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016); *accord Mendez v. Poitevent*, 823 F.3d 326, 337 (5th Cir. 2016) (affirming denial of Rule 56(d) motion where "Plaintiffs did not, moreover, identify specific facts below that would alter the district court's analysis";

-14-

where, "[i]nstead, they vaguely assert before this court that deposing the witnesses would have 'permitted [plaintiffs] to further discover the facts from the witnesses who saw the scuffle'" and, "[i]n other words, ... did not demonstrate below how the additional discovery [would] likely create a genuine issue of material fact," but, "[i]nstead, the result of the discovery they sought was wholly speculative" (citations and internal quotation marks omitted)).

## Analysis

I.    Plaintiff's Amended Motion for Continuance of Defendant's Motion for Summary Judgment/Motion for Protection should be denied.

Plaintiffs raise four arguments in their amended motion for continuance: (1) the Court should rule on the motion for class certification first because the case will be remanded if the motion for class certification is denied; (2) Republic has filed the same motion for summary judgment that was previously denied; (3) there has been no new discovery or case development since the prior motion for summary judgment was denied other than mediation and the filing of the motion for class certification and responses; and (4) Plaintiffs need discovery from Republic to provide a full and complete response to the amended motion for summary judgment. *See* Dkt. No. 109.

Republic filed a response to the original motion for continuance, *see* Dkt. No. 105, which it incorporated by reference in its response to the amended motion for continuance, *see* Dkt. No. 113. Plaintiffs did not file a reply. The amended motion for continuance revised only one paragraph. *See* Dkt. No. 109 at 1 n.1.

A.    Denial of class certification would not divest the Court of jurisdiction.

-15-

Plaintiffs suggest that the case will be remanded to state court if the motion for class certification is denied because the individual Plaintiffs' damages will not meet the amount-in-controversy requirement and the federal court will no longer have subject-matter jurisdiction.

Republic removed the case based on diversity jurisdiction. *See* Dkt. No. 1 at 2-3. At the time of removal, Plaintiffs' First Amended Petition and Class Action pleaded that "Plaintiffs seek monetary relief over $100,00.00 but not more than $200,00.00 at present. However, as discovery progresses, the claim could be over $200,000.00." Dkt. No. 1-6 at 7. Republic asserted in its Notice of Removal that, based on this damages allegation, "[t]herefore, the amount in controversy is in excess of the $75,000.00 required for this Court's jurisdiction." Dkt. No. 1 at 2; *see also id.* ("In their Amended Petition in Paragraph 29, Plaintiffs plead that they 'seek monetary relief over $100,000.00 but not more than $200,000.00 at the present. However, as discovery progresses, the claim could be over $200,000.00.'").

At the time of removal, as Republic explained in its Notice of Removal, "Plaintiffs assert claims against Defendant for Breach of Contract, Fraud by Nondisclosure, and Fraudulent Inducement, and seek to recover damages allegedly arising from the damages sustained by Plaintiffs as a result of Defendant's conduct." Dkt. No. 1 at 2; *see also* Dkt. No. 1-6 at 3-6. Plaintiffs separately pleaded that they suffered "damages in excess of the minimal jurisdictional limits of the Court" in connection with all three causes of action and sought "any and all damages whatsoever and including, but not limited to, actual, punitive, exemplary, and statutory damages available and

recoverable under statute and common law resulting from the actions of Defendant supporting Plaintiff's damages." Dkt. No. 1-6 at 3-6, 7.

The determination of whether there is federal court jurisdiction is based on "'the claims in the state court petition as they existed at the time of removal.'" *Chavez v. State Farm Lloyds*, 746 F. App'x 337, 340-41 (5th Cir. 2018) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). In general, the amount claimed in the state court petition determines the amount in controversy. *See id.*

Some states, like Texas, prohibit plaintiffs from pleading a specific amount of damages. *See* Tex. R. Civ. P. 47(b)-(c). In these cases, the removing party "'must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.'" *Chavez*, 746 F. App'x at 341 (quoting *Manguno*, 273 F.3d at 723). "'This requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the [removing party] sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount.'" *See id.* (quoting *Manguno*, 273 F.3d at 723). If the removing party makes that showing, a plaintiff may avoid removal by showing, to a legal certainty, that recovery will not exceed the jurisdictional threshold. *See id.* (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995)).

In cases where an exact amount has been plead, if a defendant can prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional

amount, removal is proper unless the plaintiff shows that at the time of removal he was legally certain not to be able to recover that amount. *See Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 n.14 (5th Cir. 2018) (citing *De Aguilar*, 47 F.3d at 1412). In other words, where the plaintiff's claims can be proved to be the type that are worth more than $75,000, they can be removed unless the plaintiff can show that he is legally bound to accept less. *See id.*

Plaintiffs did not in the months after removal – and still do not – move to remand the case to state court or challenge the amount-in-controversy requirement being met based on their own pleaded damages. Nor do Plaintiffs assert ambiguity in the statement of the jurisdictional amount in their First Amended Petition and Class Action filed in the state court at the time of removal – and those allegations were not ambiguous, and there is no evidence that Plaintiffs did not originally plead their damages in good faith. *See TFHSP LLC Series 605 v. Lakeview Loan Servicing, LLC*, No. 3:14-CV-1782-B, 2014 WL 5786949, at *4 (N.D. Tex. Nov. 3, 2014). Under these circumstances, Republic met its burden at the time of removal to establish by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional amount. *Accord Botros v. Sun Life Assurance Co. of Canada*, No. 3:16-cv-1264-C, 2016 WL 9526682 (N.D. Tex. June 3, 2016).

And Republic did not remove based on the case being a class action or aggregating putative class members' damages, which Plaintiffs separately pleaded in their Amended Petition and Class Action. *Compare* Dkt. No. 1-2, *with* Dkt. No. 1-6 at

8-18. But, even if it had – where "the jurisdictional facts that support removal must be judged at the time of the removal," *Allen*, 63 F.3d at 1335 – failure to certify the class would not divest the Court of subject-matter jurisdiction, *see H&D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 328 n.3 (5th Cir. 2000) ("The district court's denial of class certification is not relevant to our analysis. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292-93, 58 S. Ct. 586, 82 L. Ed. 845 (1938) (if district court had jurisdiction at time of removal, subsequent event that decreases amount in controversy does not defeat jurisdiction).").

"[I]n making [a court's] determination as to the amount in controversy pursuant to § 1332, the damages that [the court] may consider include only those damages claimed at the time of removal," *Pollet v. Sears Roebuck & Co.*, 46 F. App'x 226, No. 01-31309, 2002 WL 1939917, at *1 (5th Cir. July 18, 2002), and, "once the district court's jurisdiction is established, subsequent events that reduce the amount in controversy to less than $75,000 generally do not divest the court of diversity jurisdiction."*Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000); *accord Samuel v. Universal Health Servs.*, 805 F. Supp. 2d 284, 288 (E.D. La. 2011) (explaining that "post-removal changes to ... the amount in controversy do not oust the court of jurisdiction.") (citing *St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 289-91 (1938); *Gebbia*, 233 F.3d at 883)); *see also Allen*, 63 F.3d at 1336 ("Once the district court found that it had jurisdiction, the jurisdiction is deemed to have vested in the court at the time of removal. An amendment to the complaint limiting damages for jurisdictional purposes

cannot divest jurisdiction."); *cf. Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 397 (5th Cir. 2018) ("This court has held that 'if it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits ... reducing the amount do not deprive the district court of jurisdiction.' *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).").

Accordingly, "events occurring *after* removal which reduce [the] amount in controversy do not oust [a] district court's jurisdiction once it has attached." *Miranti v. Lee*, 3 F.3d 925, 929 (5th Cir. 1993) (citing *St. Paul Mercury*, 303 U.S. at 292-93). And, "when determining the amount in controversy for diversity purposes, a federal court need not pre-try the sufficiency of the plaintiff's complaint," because "[s]ubject matter jurisdiction is not defeated by the possibility that the complaint ultimately fails to state a claim on which [the plaintiff] could actually recover," and "there is no inconsistency in the district court's action of denying remand and then dismissing [plaintiff's] claims." *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002) (internal quotation marks omitted). "Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which [plaintiff] could actually recover." *Id.* (internal quotation marks omitted).

And, so, denying class certification after removal has no effect on the alleged facts and class action allegations as they existed at the time of removal, and the Court continues to have jurisdiction over the case. *See H&D*, 227 F.3d at 328 n.3; *Samuel,* 805 F. Supp. 2d at 288; *see also Robertson v. Monsanto Co.*, Civil Action No. 04-995, 2008

WL 4809036, at *2-*3 (E.D. La. Oct. 30, 2008) ("The putative class action was removed to federal court on the basis of diversity jurisdiction. The amount in controversy requirement was satisfied by the attorneys' fees the class might recover pursuant to Louisiana Code of Civil Procedure article 595. However, there was a subsequent failure to certify a class. As is plain from the cases discussed above, such a failure does not undo the subject matter jurisdiction of the federal court. Instead, the failure to certify a class is a 'subsequent event' following the establishment of subject matter jurisdiction, which has no bearing on that jurisdiction." (discussing cases)).

B.    Plaintiffs fail to show the need for additional discovery.

The Court bifurcated discovery and ordered that the parties first conduct discovery related to class certification and that, once class certification was decided, the parties would conduct discovery on the merits. *See* Dkt. No. 69.

Plaintiffs argue that they need to conduct discovery on the merits to provide a full and complete response to the amended motion for summary judgment. Specifically, they argue that they need the following categories of merits-based discovery: (1) general information regarding the Container Refresh program; (2) general information regarding the creation of the Container Refresh program; (3) Republic's decision to implement the Container Refresh program and whom Republic was going to enroll into the program; (4) the addition of the Container Refresh language to the Customer Service Agreement; (5) notice provided to existing customers regarding the Container Refresh program; (6) how notice regarding the Container Refresh program was provided to existing customers; (7) notice provided to new customers regarding the Container

Refresh program; (8) how notice regarding the Container Refresh program was provided to new customers; (9) Republic's practice of charging new customers the Container Refresh fee; (10) Republic's internal training regarding the Container Refresh program; (11) Republic's internal instructions to sales staff regarding the Container Refresh program; (12) income generated from the Container Refresh program; (13) customers actually receiving benefit from the Container Refresh program; and (14) the container exchange process for customers not enrolled in the Container Refresh program. *See* Dkt. No. 109 at 4-5.

Plaintiffs then argue that they expect that this discovery will create genuine issues of fact and that, on information and belief, it will reveal that the Container Refresh program was created by Republic to prey on small business owners in Dallas County by charging the business a minimum of $108 per year for a $75 service; that Republic did not provide proper notice of the Container Refresh program to existing or potential customers who were being automatically enrolled in the Container Refresh program; and that Republic created a program that has resulted in a financial windfall for Republic to the detriment of Republic's small business customers. *See id.* at 5-6.

But Plaintiffs fail to show either why they need additional discovery or how the additional discovery will likely create a genuine issue of material fact in response to the amended motion for summary judgment as to Plaintiffs' own claims – not those of any as-yet-uncertified putative class members. They also fail to present specific facts explaining their inability to make a substantive response to the amended motion for summary judgment. Instead, they seek additional discovery related to existing

customers and potential customers, but the amended motion for summary judgment is directed to the individual breach-of-contract claims of the two named Plaintiffs and is based on contract construction principles.

Plaintiffs have failed to show that they need to conduct discovery on the merits to provide a full and complete response to the amended motion for summary judgment.

C.    The Court may hear the amended motion for summary judgment.

Plaintiffs also argue that Republic is re-urging the prior motion for summary judgment that was previously denied and that there has been no new discovery or case developments since the original motion for summary judgment was denied.

But the prior motion for summary judgment was denied without prejudice and without opinion. The issues raised in both the original and amended motion for summary judgment have not been resolved, and the Court may consider the amended motion for summary judgment.

Accordingly, for all of these reasons, the Court should deny Plaintiffs' Amended Motion for Continuance of Defendant's Motion for Summary Judgment/Motion for Protection.

II.    The Amended Motion for Summary Judgment should be granted.

A.    Objections to Republic's Summary Judgment Evidence

1.    The Insert Notice

Plaintiffs object to admission of the Insert Notice as summary judgment evidence, arguing that Republic has failed to prove up the document as a business record and that, as a result, the Insert Notice is hearsay that does not fall within any exception.

Federal Rule of Evidence 803(6) governs the admissibility of business records as an exception to the hearsay rule. That rule provides that a business record is excluded from the hearsay rule if the record was made at or near the time by – or from information transmitted by – someone with knowledge; the record was kept in the course of a regularly conducted activity of a business; making the record was a regular practice of that activity; all these conditions are shown by the testimony of the custodian or another qualified witness; and the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. *See* FED. R. EVID. 803(6) (A)-(E).

The admission of the Insert Notice as summary judgment evidence is supported by the Declaration of Kameron Westmoreland. *See* Dkt. No. 103 at 1-62. Plaintiffs contend that this declaration is insufficient to establish the business-records exception because Ms. Westmoreland fails to state that she is the custodian of records.

In her Declaration, Ms. Westmoreland states:

> I am a Credit and Collections Manager and, along with my team, am responsible for data entry for all new accounts in Texas, including all account changes, maintaining customer contracts, collecting on outstanding receivables, and handling billing disputes, among other things for Republic Waste Services of Texas, Ltd. ("Republic"). I have personal knowledge of the statements made in this Declaration.

Dkt. No. 103 at 1. Ms. Westmoreland further states that, "[o]n or about January 25, 2016, Republic also provided Manny's Uptown a separate document [the Insert Notice] with additional details about the Container Refresh program," *Id.* at 2, and the Insert Notice is attached as an exhibit to the Declaration, *see id.* at 12 (Exhibit A-5)*; see also*

*id.* at 218 (Exhibit G-1) and 229-30 (Exhibit H-A).

Although Ms. Westmoreland did not use the words "custodian of records" in her Declaration, the undersigned finds that she has provided sufficient information to show that she is a qualified witness to prove up the Insert Notice as a business record. As such, the Insert Notice is excluded from the hearsay rule and is admissible as summary judgment evidence, and Plaintiffs' objections to the admissibility of the Insert Notice should be overruled.

### 2. Spreadsheet excerpts

Plaintiffs challenge the admission of spreadsheet excerpts as summary judgment evidence. *See id.* at 223-226 (Exhibits G-4 and G-5). They assert hearsay and rule of optional completeness objections.

The spreadsheet excerpts are attached as Exhibits G-4 and G-5 to the Declaration of Jennifer Conway. *See id.* at 222-26. Republic relies on three exhibits attached to Ms. Conway's Declaration (Exhibits G-1, G-2, and G-3), but they do not rely on Exhibits G-4 or G-5 as summary judgment evidence. *See* Dkt. No. 101 at 2-3; Dkt. No. 102 at 30-31.

Accordingly, because Republic does not submit the spreadsheet excerpts as summary judgment evidence, Plaintiffs' objections should be overruled as moot.

### 3. Paragraph 6 in the Declaration of Kameron Westmoreland

Plaintiffs object to the statement in Ms. Westmoreland's Declaration that,

[o]n or about January 25, 2016, Republic also provided Manny's Uptown a separate document [the Insert Notice] with additional details about the Container Refresh program. A true and correct copy of that document is attached hereto as Exhibit A-5.

Dkt. No. 103 at 2, ¶ 6. Although Ms. Westmoreland states that she has personal knowledge of the statements made in her Declaration, *see id.* at 1, ¶1, Plaintiffs assert that the statement is conclusory and that Ms. Westmoreland fails to testify to facts to demonstrate that she has personal knowledge that the Insert Notice was provided to Manny's Uptown. Plaintiffs also assert that the objected-to statement is hearsay within hearsay.

Federal Rule of Civil Procedure 56(e) requires an affidavit or declaration used to support or oppose a motion for summary judgment to (1) be made on personal knowledge; (2) set forth facts that would be admissible in evidence; and (3) show affirmatively that the affiant is competent to testify to the matters stated. *See* FED. R. CIV. P. 56(c)(4). Declarations asserting personal knowledge must include enough factual support to show that the declarant possesses that knowledge. *See Amie v. El Paso Ind. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2007). Conclusory declarations cannot create fact issues to defeat a summary judgment. *See First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009); *see also Amie*, 253 F. App'x at 451 (summary assertions or conclusory allegations in a declaration are simply not enough proof to raise a genuine issue of material fact). "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Hugh Symons Grp. v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002).

An affiant's or declarant's personal knowledge may be demonstrated by showing

that the facts stated "reasonably" fall within the "'sphere of responsibility'" of the affiant as a corporate employee. *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir.2005) (quoting *Hodges v. Exxon Corp.*, 563 F.Supp. 667, 669 (M.D. La.1983)); *see also Rutledge v. Liab. Ins. Indus.*, 487 F.Supp. 5, 7 (W.D. La.1979) ("An official title alone is enough to indicate the basis of personal knowledge...."). And personal knowledge does not necessarily mean contemporaneous knowledge. *See Dalton v. FDIC*, 987 F.2d 1216, 1223 (5th Cir.1993).

Ms. Westmoreland declares that she is Republic's Credit and Collections Manager and that she is responsible for, among other things, "data entry for all new accounts in Texas, including all account changes, maintaining customer contracts, collecting on outstanding receivables, and handling billing disputes." Providing the Insert Notice to Republic in January 2014 may fall within her sphere of responsibility. But Ms. Westmoreland fails to provide any factual support to show how she has personal knowledge that Republic provided the Insert Notice to Manny's Uptown with the 2016 invoice.

The undersigned finds that Ms. Westmoreland has failed to provide sufficient facts to demonstrate that she has personal knowledge regarding the statement and will not consider paragraph six in Kameron Westmoreland's Declaration in making the recommendation below on the amended motion for summary judgment.

### 4.    Wells Fargo Bank, N.A. Affidavit

Wells Fargo Bank, N.A. provided the Affidavit of its Client Services Manager,

Anthony G. Adams. *See* Dkt. No. 103 at 227-230. Mr. Adams states that his job responsibilities include managing the "team to ensure compliance to established procedures and processes. These duties encompass printing and related services." *Id.* at 227, ¶4. Mr. Adams then states that Wells Fargo provides printing and related services to Republic, which may include preparing and/or mailing printed and other materials, including materials provided by Republic. *See id.* at ¶5.

> Mr. Adams further states that
>
> Wells Fargo's records indicated that in January 2016, Wells Fargo received the January 2016 invoice with a statement date of January 26, 2016 from Republic. Account number 4036829, belonging to a Republic customer was included on the January 2016 invoice file. The Invoice was mailed on January 28, 2016 and included a remit envelope and the Container Refresh insert (200US0008) attached as Exhibit A.

*Id.* at ¶6.

> Wells Fargo's records indicated that in February 2016, Wells Fargo received the January 2016 invoice with a statement date of February 26, 2016 from Republic. Account number 4036829, belonging to a Republic customer was included on the January 2016 invoice file. The Invoice was mailed on February 29, 2016 and included a remit envelope and the Container Refresh insert (200US0008) attached as Exhibit A.

*Id.* at ¶7.

Plaintiffs object to paragraphs six and seven, arguing that Mr. Allen's Affidavit fails to lay the foundation for him to testify as to what was included in the envelope, what was mailed, and when it was mailed. But Mr. Allen testifies that he is the Client Services Manager and is responsible for compliance with established procedures and processes for the printing and related services of preparing and mailing printed materials for clients, and he is therefore qualified to interpret Wells Fargo's documents

concerning mailings for Republic in January 2016 and February 2016.

Plaintiffs also object to paragraphs six and seven under the best evidence rule, arguing that there are no statements dated January 26, 2016 or February 26, 2016, and that Wells Fargo's records should be attached rather than Mr. Allen's interpretation of the records. Federal Rule of Evidence 1002 requires that a litigant produce "[a]n original writing ... in order to prove its content." FED. R. EVID. 1002. Because neither the records to which Mr. Allen refers in paragraphs six and seven, other than the Insert Notice which is attached as Exhibit A, nor duplicates of those records are attached to the affidavit, the best evidence rule objection should be sustained. *See* FED. R. EVID. 1002, 1003.

Plaintiffs also assert a hearsay objection to Mr. Allen's statement that

Republic provided Wells Fargo with account number 40368290 and Republic informed Wells Fargo that "MANNY'S UPTOWN" was the billing name on the invoice/statement.

Dkt. No. 103 at 227, ¶8. Here, Mr. Allen is not interpreting documents. Accordingly, the hearsay objection to paragraph eight should be sustained.

Based on these recommendations, the undersigned will not consider paragraphs six, seven, or eight of Wells Fargo Bank, N.A.'s Affidavit in making the recommendation below on the amended motion for summary judgment.

B.    The Amended Motion for Summary Judgment

Republic argues that this breach of contract case involves two issues. The first issue is a matter of contract interpretation – specifically, whether a $9 charge included in the 2016 Uptown CSA and the 2016 Lakewood CSA is a monthly charge or a one-

time charge. The second issue is whether Republic and Manny's Uptown modified the 2014 CSA to add a monthly charge.

          1.     <u>The 2016 CSAs</u>

Republic contends that the 2016 Uptown CSA and the 2016 Lakewood CSA unambiguously provide for a monthly Container Refresh charge. Plaintiffs contend that these 2016 CSAs are ambiguous.

Whether a contract is ambiguous is a legal question for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *See Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument..*See Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *See id.* And when a dispute arises from the terms of a contract and the contract is not ambiguous, the Court can determine the parties' rights and obligations under the agreement as a matter of law. *See ACS Inv'rs, Inc. v. McLaughlin*, 942 S.W.2d 426, 430 (Tex. 1997).

"A contract is ambiguous 'if its plain language is amenable to more than one reasonable interpretation.' " *Id.* (quoting *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir.2009)). A term is not ambiguous because of a simple lack of clarity. *See DeWitt Cnty. Elec. Co-op, Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Nor does an ambiguity arise merely because parties to an agreement proffer different

interpretations of a term. *URI, Inc. v. Kleberg Cnty.,* 543 S.W.3d 755, 763 (Tex. 2018); *DeWitt*, 1 S.W.3d at 100 . An ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning. *See id.*

If a contract is not ambiguous, then the Court "appl[ies] its plain meaning and enforce[s] it as written." *Id.* But, if a contract is ambiguous, the Court may "consider extrinsic evidence for 'the purpose of ascertaining the true intentions of the parties expressed in the contract.' " *Trammell Crow Residential Co. v. Am. Protection Ins. Co.*, 547 F. App'x 513, 517 (5th Cir. 2014) (quoting *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex.1996)).

Both of the 2016 CSAs list a $9 Container Refresh charge under a column for additional charges. *See* Dkt. No. 103 at 6, 8. Both also state:

> If service to Customer includes Container Refresh, Customer is limited to requesting one exchange of each participating container <u>every twelve months of paid enrollment</u>; any additional exchange is subject to Company's standard container exchange fee. Customer agrees that during any enrollment year in which Customer receives an exchange under the program, any service change request by Customer to Cancel Container Refresh will not be effective until Customer completes payment <u>for twelve (12) consecutive months of enrollment</u> in the program. Company reserve the right, in its sole discretion, to suspend or cancel the Container Refresh program.

*See id.* at 7, 9 (emphasis added). The 2016 CSA for Manny's Lakewood also provides for six months of free enrollment in the Container Refresh program. *See id.* at 8. ("Container Refresh Promotional Period: 6 <u>months</u> free.") (emphasis added).

Plaintiffs argue that the 2016 CSAs are ambiguous because the Container

-31-

Refresh charge is listed under the column for "additional charges," instead of either the columns for "monthly service" or "one time charges." Thus, Plaintiffs argue, it is unclear how often they will be charged, and they contend that it would be reasonable to construe the 2016 CSAs to provide for a one-time Container Refresh charge.

The undersigned disagrees. The express language of the 2016 CSAs unambiguously describes the Container Refresh program as one involving enrollment over a twelve-month period and further requires the Customer to complete payment for twelve consecutive months. The 2016 Manny's Lakewood CSA provides for six months of free enrollment in the Container Refresh program. It would be unreasonable to construe the 2016 CSAs as providing for a one-time Container Refresh charge because the charge was listed as an additional charge instead of a monthly charge. That interpretation would render the language in the 2016 CSAs regarding monthly enrollment and monthly payment meaningless. Instead, the 2016 CSAs can be given a definite or certain legal meaning and are, as a matter of law, unambiguous.

Accordingly, the undersigned concludes that the 2016 CSAs unambiguously provide for a $9 monthly Container Refresh charge. And, because the 2016 CSAs are unambiguous, the Court need not consider extrinsic evidence.

> 2.    The 2014 CSA

Republic contends that the 2014 Manny's Uptown CSA was modified to add a $9 Container Refresh charge. Manny's Uptown contends that it did not receive notice of this proposed modification and did not agree to it.

Modification of a contract results in some change to the original agreement that

introduces a new or different element into the details of the contract, but leaves its general purpose and effect undisturbed. *See Enserch Corp. v. Rebich*, 925 S.W.2d 75, 83 (Tex. App. – Tyler, writ dism'd by agreement). A contract modification creates a new contract that includes new, modified provisions and unchanged, old provisions. *See Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547-48 (Tex. App. – Houston [1st Dist.] 1994, no writ).

A valid contract modification requires two elements: (1) the modification is based upon new consideration, and (2) there existed the same degree of mutuality and meeting of the minds as was present for the original contract. *See Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 113 (Tex. App. – El Paso, pet. denied). But the continuing mutual obligations by the parties may furnish sufficient consideration to support a binding modified contract. *See Enserch Corp.*, 925 S.W.2d at 83.

A party may accept a contract, and indicate its intent to be bound to its terms, by acts and conduct in accordance with the terms. *See Thomas J. Sibley, P.C. v. Brentwood Inv. Dev. Co., L.P.*, 356 S.W.3d 659, 663 (Tex. App. – El Paso 2011, pet. denied). The mode of expressing assent to an offer to contract is generally inconsequential so long as it effectively makes known to the offeror that the offer has been accepted. *See Horton v. DaimlerChrysler Fin. Servs. Americas, L.L.C.*, 262 S.W.1, 6 (Tex. App. – Texarkana 2008, no pet.).

The 2014 Manny's Uptown CSA included a provision providing for rate adjustments. Manny's Uptown contends that the Container Refresh charge was not a rate increase, but was instead a charge or fee, and that only rates could be modified.

They also argue that there must be an existing rate before a rate may be increased. Those contract provisions relate to actions that Republic could take unilaterally, but nothing prevented the parties from agreeing to modify the contract.

Manny's Uptown also argues that it did not receive notice of the proposed modification.

The January 2016 invoice stated that "[y]our future invoices will include a charge for Container Refresh. This lets you swap your container once a year for a low $9 monthly rate." Dkt. No. 103 at 10. The February 2016 invoice stated that "[t]his invoice includes a charge for Container Refresh in which you are automatically enrolled." *Id.* at 13. Both invoices stated that plan and opt-out details were enclosed.

Republic has failed to prove that the Insert Notice was provided with both invoices. But both invoices informed Plaintiffs that they had been automatically enrolled in the Container Refresh program and stated that they could opt-out. This was sufficient to provide Manny's Uptown with notice of the proposed contract modification, and Manny's Uptown has not come forward with evidence that would create a genuine dispute of material fact as to modification or notice.

The parties agreed that consent to rate modifications could be given "verbally, in writing or by the parties' actions and practices." Dkt. No. 103 at 5. Beginning in February 2016, each invoice listed the $9 Container Refresh fee as a separate line item and designated the charge for the upcoming month. And Manny's Uptown paid each of those invoices, including the $9 monthly Container Refresh charge. It is well-established that acceptance may be shown by conduct, *see Horton*, 262 S.W.3d at 6, and

Manny's Uptown accepted modification of the 2014 CSA to add a monthly Container Refresh charge by tendering the first $9 payment. Manny's Uptown's continued payments of the $9 monthly Container Refresh charge reinforced acceptance of the contract modification. In the face of this evidence, viewing all facts and drawing all reasonable inferences in the light most favorable to the nonmoving parties, Manny's Uptown has not come forward with evidence that would create a genuine dispute of material fact as to the breach of contract claim, on which Republic has carried its summary judgment burden.

Accordingly, for all these reasons, the undersigned recommends that the Court grant Republic's amended motion for summary judgment.

III.    The motion for class certification should be terminated as moot.

Because dismissal of Plaintiffs' only remaining claim resolves the case, the Court should deny as moot Plaintiffs' Motion to Certify Class [Dkt. No. 90] – which is based on certification of Plaintiffs' existing claims and was fully briefed before Plaintiffs sought leave to amend to add two new named plaintiffs in their Motion for Leave to File Amended Complaint Adding Plaintiffs [Dkt. No. 99]. *Accord Fontenot v. City of Houston*, 647 F. App'x 402, 406 (5th Cir. 2016) ("After determining that the City was entitled to summary judgment, the district court correctly denied Miller's motion for class certification as moot. *Fontenot v. City of Houston*, 2014 WL 3891682, at *5. Since Miller has not created a genuine dispute of material fact on municipal liability, the putative class cannot be certified on that claim either. *See Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 526 (5th Cir. 2002)."); 7B Charles Alan Wright et al., 7AA Fed. Prac. & Proc. Civ.

§ 1785 (3d ed.) ("In appropriate cases the court may use an accelerated summary-judgment procedure prior to class certification to test plaintiffs' right to proceed to trial. This approach differs from that in Dolgow in that the court is not assessing whether there is a substantial possibility that plaintiff will prevail for purposes of deciding whether class certification is appropriate. Rather, it is determining that there are no genuine issues of material fact and that defendant is entitled to prevail as a matter of law on the underlying dispute. The court always is empowered to make a determination on the merits irrespective of the denomination of the suit as a class action; as discussed elsewhere, the propriety of that inquiry is limited only by concerns of whether the class determination should be postponed until after the merits determination. If summary judgment is granted prior to certification, the decision will bind only the named parties." (footnotes omitted)). If the Court accepts this recommendation, the undersigned can then address Plaintiff's Motion for Leave to File Amended Complaint Adding Plaintiffs [Dkt. No. 99].

## Recommendation

The Court should deny Plaintiffs' Amended Motion for Continuance of Defendant's Motion For Summary Judgment/Motion for Protection [Dkt. No. 109], grant Defendants' Amended Motion for Summary Judgment [Dkt. No. 101], dismiss with prejudice Plaintiffs' breach-of-contract claim, and deny as moot Plaintiffs' Motion to Certify Class [Dkt. No. 90].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: July 23, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE